# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Case No. 6:19-cv-1837-CEM-LRH

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and STATE FARM FIRE
AND CASUALTY COMPANY,

      Plaintiffs,

v.

ADVANTACARE OF FLORIDA, LLC,
CRN RECEIVABLE MANAGEMENT
LLC,
ADVANTACARE MULTI-
SPECIALTY GROUP, LLC, KERRIANN FITZPATRICK, f/k/a
KERRIANN HERZOG,
JOHN MANCUSO,
KENNETH HOWE, and
FRANK SEVERIANO ALVAREZ JR.,
M.D.,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ADVANTACARE MULTI-SPECIALTY GROUP, LLC'S MOTION TO DISMISS AND MOTION TO STRIKE

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "the State Farm Plaintiffs") submit the following response in opposition to Advantacare Multi-Specialty Group, LLC's "Motion to Dismiss Plaintiff's [sic] Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Scandalous, Immaterial Allegations and Incorporated Memorandum of Law" (the "Motion") [ECF No. 18].

## I. INTRODUCTION

This action involves an unlawful scheme orchestrated by Defendants to obtain Personal Injury Protection Coverage ("PIP Benefits") and Medical Payments Coverage ("MPC") (collectively, "No-Fault Benefits") payments from State Farm Plaintiffs to which the Defendants were not entitled.

Advantacare of Florida, LLC ("Advantacare of Florida") operated unlawfully as an unlicensed clinic from January 2013 through December 2016 when it ceased operations. Advantacare of Florida unlawfully claimed an exemption from Florida's mandatory health care clinic licensure laws because it claimed Advantacare of Florida was "wholly owned" by Frank Alvarez Jr., M.D. ("Dr. Alvarez"). In reality, Advantacare of Florida never qualified for an exemption from licensure because it was owned—at least in part—and controlled by three unlicensed laypersons: Fitzpatrick, Mancuso, and Howe.

Advantacare of Florida was succeeded by Advantacare Multi-Specialty Group, LLC ("MSG"), a licensed health care clinic that operated the same seven clinic locations as Advantacare of Florida. MSG began operating in January 2017 and continues operating today. The services MSG provided at the five clinic locations where Dr. Alvarez purportedly served

as medical director were unlawful because MSG and Dr. Alvarez failed to comply with their statutory and administrative medical director duties, including the failure to: (i) conduct systematic reviews of MSG's billings to ensure the billings were not fraudulent or unlawful; (ii) take immediate corrective action upon discovery of an unlawful charge at MSG; (iii) ensure all health care practitioners at MSG had active appropriate certification or licensure for the level of care being provided; and (iv) provide day-to-day supervision of MSG. Thus, the claims and charges related to the services performed at MSG are not compensable under Florida law. *See* Fla. Stat. § 400.9935(3) ("A charge or reimbursement claim made by or on behalf of a clinic . . . that is otherwise operating in violation of this part . . . is an unlawful charge and is noncompensable and unenforceable.").

MSG's Motion to Dismiss should be denied in its entirety. Each of the arguments raised by MSG misstates the law governing the State Farm Plaintiffs claims and/or the allegations in the Complaint as follows:

- The Complaint alleges the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim against MSG with sufficient particularity. MSG attacks the credibility and sufficiency of the State Farm Plaintiffs' allegations by impermissibly raising matters outside the four corners of the Complaint, essentially arguing the merits of MSG's disagreement with, or denial of, State Farm Plaintiffs' factual allegations.

- MSG's arguments for dismissal of the unjust enrichment claim fail because they concern a different Defendant not named in Count V—Advantacare of Florida—and therefore do not address the substance of the State Farm Plaintiffs' claim for unjust enrichment against MSG. The Complaint plausibly alleges MSG's claims were unlawful and noncompensable because MSG and Dr. Alvarez failed to comply with the duties for medical directors set out in Florida Statutes. § 400.9935(1)(g).

- The declaratory action is not "superfluous" because, inter alia, it pertains to a different subset of claims—those that have not been paid—than State Farm Plaintiffs' FDUTPA and unjust enrichment actions to recover amounts already paid by Plaintiffs.

- MSG fails to establish the allegations it asks the Court to strike are obviously false and

have no possible relation to this case, and further, the allegations targeted by MSG's Motion concern Dr. Alvarez and Advantacare of Florida, not MSG.

## II.   THE COMPLAINT STATES A FDUTPA CLAIM AGAINST MSG

The Motion seeks dismissal of the FDUTPA claim against MSG (Count IV) on the grounds the FDUTPA claim "sounds in fraud" and must therefore meet the heightened pleading requirements of Rule 9(b). The Motion attempts to show the FDUTPA allegations are insufficient by purporting to refute or deny the allegations' accuracy and urging the Court to look beyond the four corners of the Complaint. MSG's attempt to clothe, what are essentially factual disagreements and denials, in the language of a Rule 9(b) challenge is not well-taken. Although Rule 9(b) should not apply to the FDUTPA claims in this case, the Complaint contains enough detail to satisfy either pleading standard.

### A.   Rule 9(b) does not apply to the FDUTPA claim against MSG.

MSG contends the State Farm Plaintiffs have not stated the FDUTPA Claim against them with the required specificity under Rule 9(b), but the heightened pleading standard does not apply in this context. First, courts have routinely rejected this argument in similar actions brought by insurance carriers to recover payments for services deemed noncompensable or unlawful by statute. *See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1144 (S.D. Fla. 2018) (refusing to apply Rule 9(b) to insurers' FDUTPA claims to recover unlawfully obtained payments for violations of Health Care Clinic Act); *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, No. 1:14-CV-20625-KMM, 2014 WL 11910630, at *4 (S.D. Fla. Sept. 15, 2014) (holding Rule 9(b) did not apply to State Farm's FDUTPA claim against defendant clinics and owners who obtained a license exemption from

AHCA by falsely representing that a licensed medical provider wholly owned the clinics).[1]

Second, courts have recognized FDUTPA claims and fraud claims have different elements intended to serve different policy goals. *See, e.g., Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *5 (S.D. Fla. Nov. 14, 2014). For instance, FDUTPA claims do not "require subjective evidence of reliance, as would be the case with a common law action for fraud." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000). The focus of the first element of a FDUTPA claim is whether the practice in question "was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) (internal quotation omitted). "By contrast, fraud requires a specific intent to deceive, implicating defendants' character, and the heightened pleading standards [of Rule 9(b)] are intended to protect against spurious charges of immoral and fraudulent behavior." *Office of Attorney Gen. v. Moving & Storage Accounting Inc.*, 18-CV-63144, 2019 WL 2255575, at *7 (S.D. Fla. Mar. 22, 2019) (quotation omitted). Because the focus of a FDUTPA claim is the objective effect of the deceptive practice rather than the subjective impetus for it, a complaint that plausibly alleges FDUTPA violations "will generally put a defendant on fair notice" without subjecting the defendant to spurious claims. *See Allstate Ins. Co. v. Auto Glass Am., LLC*, 618CV2184ORL41LRH, 2019 WL 4751729, at *6 n.12

---

[1] *See also State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., Inc.*, No. 8:14-cv-02381, 2014 WL 7070832, at *3 (M.D. Fla. 2014) (denying motion to dismiss FDUTPA claim targeting unlawful scheme to obtain PIP reimbursements); *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1312-13 (M.D. Fla. 2014) (same); *Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC*, 612CV1138ORL36DAB, 2013 WL 12155947, at *3 (M.D. Fla. Oct. 23, 2013) (same); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 6:11-cv-1373, 2011 WL 6450769, at *4 (M.D. Fla. Dec. 21, 2011); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at *12 (M.D. Fla. Sep. 21, 2011) (same); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290–91 (M.D. Fla. 2009) (declining to apply rule 9(b) to insurer's FDUTPA claim to recover No-Fault payments obtained in violation of Florida law).

(M.D. Fla. Sept. 30, 2019).

The Complaint alleges Dr. Alvarez and MSG violated the Health Care Clinic Act ("HCCA") by, *inter alia*, failing to comply with the mandatory medical director obligations in the HCCA. These violations entitle the State Farm Plaintiffs to recover under FDUTPA without alleging fraud. Moreover, MSG offers no explanation or support for its conclusion that Rule 9(b) applies because the State Farm Plaintiffs' FDUTPA claim "sounds in fraud[.]" Other courts have declined to apply Rule 9(b)'s heightened standard in similar circumstances. *See Med. Serv. Ctr.*, 2014 WL 11910630, at *4 (explaining the "general rule is that the heightened pleading requirement for fraud under Rule 9(b) does not apply to claims under FDUTPA" and pointing out defendants' failure to provide any support for position that Rule 9(b) should apply). This is true even where the complaint's allegations implicated fraudulent conduct. *See Harris*, 2014 WL 12516076, at *4 ("Therefore, even where a FDUTPA claim includes allegations which implicate fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b)."); *Moving & Storage Accounting*, 2019 WL 2255575, at *7 (explaining "the better argument militates against application of Rule 9(b)'s heightened pleading requirements to the FDUTPA allegations in Counts 7, 8, and 9, notwithstanding that those unfair trade claims include allegations that implicate fraudulent conduct.").

**B.   The Complaint satisfies the requirements of both Rule 8(a) and Rule 9(b).**

Even if the Court finds the heightened pleading standard of Rule 9(b) applies, the Motion still fails because Count IV is alleged with sufficient specificity to satisfy the heightened pleading requirements of Rule 9(b).

The Complaint alleges MSG violated the HCCA (Florida Statutes §§ 400.990-400.995)

and Florida Statutes § 626.9541(1)(u), both of which constitute *per se* FDUTPA violations and thus, satisfy the first element[2] of the FDUTPA claim. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1326 (S.D. Fla. 2018) ("*Performance III*") (recognizing a violation of the HCCA as a *per se* FDUTPA violation and that "a violation of a predicate statute satisfies the first element of the FDUTPA claim[.]"). The Complaint alleges the services MSG provided at the five clinic locations where Dr. Alvarez purportedly served as medical director were unlawful because MSG and Dr. Alvarez failed to comply with their medical director duties set forth in the HCCA and regulations implementing the same. *See* [ECF No. 1], Compl. at ¶¶ 3 and 111.

Specifically, State Farm Plaintiffs allege that, from January 2017 to the present, MSG and Dr. Alvarez failed to comply with four separate medical director duties: (i) Dr. Alvarez failed to provide day-to-day supervision of Advantacare MSG; (ii) Dr. Alvarez failed to conduct adequate systematic reviews of Advantacare MSG's billings to ensure the billings were not fraudulent or unlawful; (iii) Dr. Alvarez failed to take immediate corrective action upon discovery of an unlawful charge at Advantacare MSG, including for services and diagnostics like MRIs that were medically unnecessary; and (iv) Dr. Alvarez failed to ensure all health care practitioners at MSG had active appropriate certification or licensure for the level of care being provided, particularly with respect to the licensed massage therapists

---

[2] The Complaint alleges that Defendants' conduct gives rise to both traditional and *per se* FDUTPA claims. *See* Compl, ¶¶ 95-97; 116-118. The elements for *per se* and traditional FDUTPA violations are different. One commits a *per se* violation of FDUTPA by violating "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). For *per se* FDUTPA violations, therefore, "it is presumed that the violation [of the underlying statute] constitutes a deceptive or unfair practice[.]" *See Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7–8 (M.D. Fla. Dec. 22, 2009); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) ("*Performance I*").

employed by MSG.

Regarding the first violation, the Complaint sufficiently alleges Dr. Alvarez failed to provide day-to-day supervision of MSG as required by Florida Administrative Code Rule 59A-33.008(1). *See* [ECF No. 1], Compl. at ¶ 67. Although MSG's Health Care Licensing Applications provide Dr. Alvarez was purportedly present at MSG five days per week, in reality, Dr. Alvarez was an absentee medical director. *See id*. at ¶¶ 66-67. Contrary to the representations made to AHCA, Dr. Alvarez testified he was only present at an MSG Location one day per month. *Id*. at ¶ 67 (*citing* Oct. 10, 2017 Dr. Alvarez Dep. Tr. 36:25-37:7). Even then, Dr. Alvarez did not devote this time solely to perform his medical director duties, but also used it to appear for depositions. *Id*.

The Complaint also includes sufficient factual allegations showing MSG and Dr. Alvarez failed to systematically review MSG's billings as required by Florida Statutes § 400.9935(1)(g) and, as a result, failed to prevent MSG from submitting unlawful and fraudulent insurance claims to the State Farm Plaintiffs. In *Allstate Insurance Company. v. Vizcay*, an automobile insurer alleged the claims and charges submitted by three clinics were unlawful and noncompensable because their medical director failed to conduct systematic reviews of the clinics' billings. 826 F.3d 1326, 1328 (11th Cir. 2016). The jury entered a verdict in favor of the automobile insurer, and the three clinics appealed. *Id*. On appeal, the Eleventh Circuit rejected the argument "the evidence presented at trial was insufficient to support the jury's finding that [the medical director] failed to substantially comply with the statute's requirements." *Id*. at 1332. The clinics argued it was not clear the medical director's systematic reviews were inadequate because the HCCA does not state how many files a

medical director must review. *Id*. Although the statute does not specify the number of files that must be reviewed, the court held that "the jury was presented with enough evidence to find that [the medical director] did not come close to satisfying it." *Id*.   Here, like *Vizcay*, Dr. Alvarez failed to utilize any "system" for selecting the charts he reviewed, a fact which is supported by Dr. Alvarez's *own* deposition testimony. *See* [ECF No. 1], Compl. at ¶ 69. Rather, MSG selectively provided Dr. Alvarez with the documents he reviewed. *Id*. (*citing* Oct. 10, 2017 Dr. Alvarez Dep. Tr. 29:23-30:2). Dr. Alvarez also admitted that his review was superficial and that he reviewed the charts for "errors" but not for "content". *Id*., ¶ 70 (*citing* Oct. 10, 2017 Dr. Alvarez Dep. Tr. 28:22-29:12).

The third failure to comply with the HCCA's requirements detailed in the Complaint is Dr. Alvarez's failure to take immediate corrective action, an essential component of the systematic billing reviews required under the HCCA. *See* Fla. Stat. § 400.9935(1)(g) ("Upon discovery of an unlawful charge, the medical director … shall take immediate corrective action"). For example, Dr. Alvarez failed to take corrective action to address the fact MSG diagnosed 94% of its rehabilitation patients with an emergency medical condition ("EMC"), a central component of MSG's scheme because it eliminated the $2,500 cap on PIP Benefits. *Id*. at ¶ 72-74. Once an EMC was declared, MSG could seek reimbursement for services up to $10,000. *Id*. at ¶ 74 (citing Fla. Stat. § 627.736(1)(a)(3)). Dr. Alvarez also failed to take corrective action to prevent MSG from ordering and performing medically unnecessary MRIs. *Id*. at ¶ 75. MSG ordered and performed one or more MRIs on 82% of its rehabilitation patients. *Id*. MSG billed the State Farm Plaintiffs more than $2,000 on average for each MRI, which constituted more than 20% of each patient's available PIP Benefits. *Id*.

Additionally, Exhibit 9 of the Complaint specifically identifies the pervasive patterns in MSG's billing for its rehabilitation patients. For each rehabilitation patient, Exhibit 9 identifies whether MSG declared an EMC was present, and, if so, the date it was declared and the health care practitioner who made the determination. Exhibit 9 also identifies the number of MRIs performed by MSG for each rehabilitation patient, whether an MRI was taken in 2 or more regions of the spine, and the date of the first MRI, a factor which is relevant in determining the necessity of the MRI.

The final failure attributed to Dr. Alvarez in the Complaint is that he failed to ensure all health care practitioners at MSG had active appropriate certification or licensure for the level of care being provided. *See* [ECF No. 1], Compl. at ¶ 79. MSG employed or engaged licensed massage therapists ("LMTs") who purportedly performed therapeutic exercise with patients, which is beyond the scope of a LMT's practice. *Id*. ¶ 80. Dr. Alvarez did not detect or correct this unlawful practice, thus allowing these LMTs to practice as unlicensed physical therapists. *Id*. ¶ 84.

As a result of these failures, the claims and charges related to the services performed at MSG are unlawful and not compensable under Florida law. *See id at* ¶ 3 (citing Fla. Stat. § 400.9935(3)).  The Complaint further alleges MSG, Dr. Alvarez, Fitzpatrick, Mancuso, and Howe presented a false claim for payment in violation of Florida Statutes § 626.9541(1)(u) each time they presented or caused to be presented charges for services that were not lawful when they were rendered as a result of MSG and Dr. Alvarez's medical director

noncompliance.[3] *See* [ECF No. 1], Compl. at ¶¶ 114-15.

Consequently, the State Farm Plaintiffs have sufficiently pled their claim to survive dismissal regardless of the pleading standard applied. *See Physicians Group*, 9 F. Supp. 3d at 1311; *Comprehensive Physician Servs.*, 2014 WL 7070832, at *2 (complaint's allegations sufficient even under Rule 9(b) where the complaint explained why the services billed on over 400 claims in which defendants made false statements were not lawfully rendered because they violated Florida law); *see also Altamonte Springs Diagnostic*, 2011 WL 6450769, at *6 (holding complaint stated a FDUTPA claim where it alleged "State Farm had a statutory right to refuse to pay the claims submitted by Defendants while in violation of HCCA licensing requirements [and that] it paid the claims as a direct result of Defendants' allegedly fraudulent conduct.").

### C.  MSG's factual arguments are without merit.

The Motion raises a number of unpersuasive arguments challenging the sufficiency of State Farm Plaintiffs FDUTPA factual allegations. In particular, MSG contends:

- Portions of Dr. Alvarez's testimony from the deposition referenced in the Complaint contradict the State Farm Plaintiffs' allegations and show that Dr. Alvarez substantially complied with his statutory duties as medical director. Mot. to Dismiss at 10-12.

- The Complaint fails to allege AHCA would not have granted MSG's license if the application had included Dr. Alvarez's true schedule because the medical director's daily physical presence is not required. *Id*. at 9-10.

- The Complaint "relies entirely on vague statistics" without pointing to any specific instances of fraudulent claims. *Id*. at 12-14.

---

[3] The substance and timing of MSG's false claims for payment are clearly presented in the allegations discussed above and in the information contained in Exhibit 11, which provides the claim number, initials of the patient treated, which State Farm Plaintiff was billed, the date of the accident, the dates treatment at MSG began and ended, the aggregate amount billed by MSG for the patient, and a breakdown of the amount paid by the State Farm Plaintiffs from No-Fault Benefits. *See* [ECF No. 1], Compl. Ex. 11.

These arguments misstate the law.

First, it is well-settled courts reviewing motions to dismiss under Rule 12(b)(6) must accept the well-pled factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The fact that, *in MSG's view*, portions of Dr. Alvarez's deposition transcript contradict the testimony excerpted in the Complaint is not a valid basis for the Court to abandon its obligation to accept the well-pled factual allegations of the Complaint as true. In fact, the presumption of truth of the Complaint's allegations recently led to the opposite conclusion in a similar case. *See Health & Wellness Servs.*, 389 F. Supp. 3d at 1148 (rejecting argument in motion to dismiss based on defendant's ardent denials of certain alleged facts because they were "directly controverted by State Farm's allegations"). Defendant's argument also would require the Court to engage in a premature credibility determination.

Whether AHCA would have granted MSG a clinic license if Dr. Alvarez disclosed he was only physically present one day a month is irrelevant because, as the Eleventh Circuit recognized in *Silver Star*, automobile insurance carriers are entitled to seek a judicial remedy to recover amounts paid on unlawful and noncompensable claims. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). MSG also contends, without any legal support, Dr. Alvarez's presence at MSG one day per month is not inconsistent with his duty to provide day-to-day supervision because Florida Administrative Code Rule 59A-33.008(1) does not directly specify daily physical presence is required. *See* [ECF No. 18], Mot. at 10. MSG's contention fails. A medical director's physical presence is relevant in determining whether the day-to-day supervision requirement is satisfied. *See State Farm Mut.*

*Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1164-65 (S.D. Fla. 2015) (granting summary judgment for State Farm where it was shown that clinic medical directors failed to satisfy their daily supervisory requirements by, *inter alia*, neglecting to be present at the clinic more than once every one or two weeks). Consistent with *B&A*, the fact Dr. Alvarez was only physically present one day per month, supports the State Farm Plaintiffs' claim Dr. Alvarez failed to provide day-to-day supervision.

MSG also argues the Complaint fails because the State Farm Plaintiffs did not, and as a matter of law could not, allege AHCA would not have granted the clinic license to MSG if it had been provided with Dr. Alvarez's true schedule as medical director (pursuant to which Dr. Alvarez was present at MSG once per month as opposed to his weekly presence at each of the five locations where he served as medical director). *See* [ECF No. 18], Mot. at 10. Regardless of the veracity of MSG's license application, and irrespective of how AHCA would adjudicate the issue, Dr. Alvarez's failure to meet his statutory obligations would have occurred even if Dr. Alvarez had provided his true schedule to AHCA. MSG still would have operated "in violation of th[e HCCA]" and therefore its charges would still have been unlawful and noncompensable. Automobile insurance carriers are entitled to seek a judicial remedy to recover amounts paid on unlawful and noncompensable claims. *Silver Star*, 739 F.3d at 584; *Med. Serv. Ctr.*, 2014 WL 11910630, at *4 (insurers have a judicial remedy against for violations of the licensing requirements under the HCCA).

MSG next contends the Complaint's use of statistics concerning MSG's provision of certain services to patients means the allegations are insufficient to meet the requirements of Rule 9(b). *Cf. State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, 18-cv-1279,

2018 WL 6514797 (D. Md. Dec. 11, 2018).[4] MSG's argument attempts to analogize two very dissimilar cases. *Carefree* was a diversity action in which State Farm Mutual brought a claim of common law fraud under Maryland law against a chiropractic clinic and its chiropractor employees. The type of action asserted by State Farm in *Carefree* concerned the systematic provision of medically unnecessary treatment to patients to maximize benefits payments to the provider. *See id.* at *3. Such cases require the use of statistical evidence to show the significance of the pattern across a large population of patients. This case, by contrast, involves claims for relief under Florida law based on violations of the health care clinic licensing and regulatory scheme enacted by the Florida Legislature. As noted above, the claims brought in this action do not sound in fraud but instead are based on the failure of the Defendants to comply with certain mandatory statutory obligations.

Here, the argument based on the holding in *Carefree* that statistically significant patterns do not, standing alone, sufficiently support a claim of common law fraud has no relevance to the State Farm Plaintiffs' claims for relief in this case. The statistics recited in the Complaint provide support for the State Farm Plaintiffs' allegations but they are in no way the sole basis for the asserted claims for relief. By way of example only, State Farm Plaintiffs' allegation that Dr. Alvarez failed to comply with Florida Statute § 400.9935(1)(d) because unsupervised massage therapists were providing services that required a physical therapy license does not rely on statistics in any way. *See* Compl., ¶¶ 80-85. Even if this particular

---

[4] The *Carefree* court recently revisited the order cited by MSG, finding that "State Farm's amended complaint sufficiently alleges fraud. Considering the purposes of Rule 9(b), the court finds that they are satisfied. Carefree is on notice of what records State Farm alleges to be fraudulent, and why it alleges them to be fraudulent." *State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, 18-CV-1279, 2019 WL 4722675, at *5 (D. Md. Sept. 25, 2019).

compliance failure were the sole basis of State Farm Plaintiffs' claims, it would be sufficient

to warrant the relief sought. Indeed, the Complaint is replete with additional factual allegations

and content that do not rely upon, or even implicate, statistics, such as Dr. Alvarez's own

deposition testimony and that of former employees, false or misleading statements to AHCA,

documents like the Fitzpatrick Affidavit, and email correspondence attached to the Complaint.

*See id.* at ¶¶ 35-71 & Exs. 2-7. Accordingly, State Farm Plaintiffs' use of statistical calculations

to support their allegations that Dr. Alvarez did not conduct meaningful systematic reviews of

the clinic's billings to ensure they were not unlawful does not therefore render State Farm

Plaintiffs' allegations insufficient, and the Motion is properly denied as to the FDUTPA claim.

### III.     The Complaint States a Claim for Unjust Enrichment

MSG contends the State Farm Plaintiffs' unjust enrichment claim (Count V) "is not

supported by sufficient alleged facts and should be dismissed." [ECF No. 18], Mot. at 15.

However, the substance of MSG's argument for dismissal actually relates to the HCCA

violations alleged against *a different Defendant* in this case, Advantacare of Florida, *for a*

*different time period* predating MSG's involvement. Specifically, the Motion asserts "the

Complaint does not include sufficient factual allegations showing ***Advantacare of Florida*** was

not wholly owned and properly exempt from licensure[.]" *Id.* (emphasis added) Put another

way, Advantacare of Florida is not named in Count V because Count V is concerned with

conduct that began in January of 2017, months after Advantacare of Florida had ceased

operations. For this reason alone, the Motion to Dismiss directed at Count V fails.

To the extent it raises any challenge at all, the Motion only challenges the adequacy of

the State Farm Plaintiffs' allegations that it would be inequitable[5] for MSG to retain the benefit

conferred. But as set forth in detail in the previous section, *supra*, the State Farm Plaintiffs

have alleged MSG operated in violation of the HCCA because its medical director failed to

comply with four separate statutory requirements:

(1)  Dr. Alvarez employed no system for reviewing records and spent very little time
     reviewing records, thereby failing to conduct adequate systematic reviews of MSG's
     billings to ensure the billings were not fraudulent or unlawful;

(2)  Dr. Alvarez failed to take immediate corrective action upon discovery of an unlawful
     charge at MSG, including for services and diagnostics like MRIs that were medically
     unnecessary, particularly where the lack of necessity would have been obvious;

(3)  Dr. Alvarez failed to ensure all health care practitioners at MSG had active appropriate
     certification or licensure for the level of care being provided, particularly with respect
     to the licensed massage therapists employed by MSG, whom he permitted to perform
     procedures requiring a physical therapy license; and

(4)  Dr. Alvarez failed to provide day-to-day supervision of MSG, and MSG represented to
     AHCA that Dr. Alvarez was present at each location at least once per week on a specific
     day of the week, when in fact Dr. Alvarez was only at MSG one day per month,
     according to his own sworn testimony.

*See id.* at ¶¶ 3; 66-84; 110-120. State Farm Plaintiffs alleged these violations of the HCCA

rendered MSG's charges unlawful and noncompensable and that they paid MSG for claims

they were entitled to deny. *See id.* at ¶ 3 (*citing* Fla. Stat. § 400.9935(3)). Thus, the Complaint

sufficiently alleges it would be inequitable for MSG to retain the benefit conferred by the State

Farm Plaintiffs of payments for noncompensable claims. *See id.* at ¶ 103.

Florida law entitles an insurer to recover the amounts it paid to a clinic operating in

---

[5] Under Florida law, the elements of a claim for unjust enrichment are: (1) plaintiff conferred a benefit on
defendants; (2) the defendants have knowledge of the benefit; (3) defendants voluntarily accepted and retained
the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendants to retain
the benefit without paying the value thereof to the plaintiff. *State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F.
Supp. 3d 1246, 1253–55 (S.D. Fla. 2018).

violation of the HCCA by asserting a claim for unjust enrichment. *See Vizcay*, 826 F.3d at 1330-31 (explaining, in case involving failure to comply with medical director duties, that "because claims made by a clinic operating in violation of the [HCCA] are deemed noncompensable and unenforceable under the statute, an insurer can recover its payments made to a violator-clinic on a theory of unjust enrichment"); *Silver Star*, 739 F.3d at 583-84. ("State Farm claimed in this case that Silver Star was unjustly enriched because it accepted payments from State Farm that it was not entitled to under Florida law. If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment."); *Health & Wellness Servs.*, 389 F. Supp. 3d at 1146; *Med. Serv. Ctr.*, 103 F. Supp. 3d at 1355 (finding that "[a]s a result of Defendants' conduct, [State Farm] paid claims which it was statutorily entitled to deny. Accordingly, it would be inequitable to allow Defendants to retain those benefits[.]"); *Altamonte Springs Diagnostic*, 2011 WL 6450769, at *4. This is exactly like the allegations the State Farm Plaintiffs have alleged here, and the Motion is therefore properly denied.

## IV.   The State Farm Plaintiffs Pled Sufficient Facts to Allege a Declaratory Relief Claim

MSG contends Count VI fails to state a claim for declaratory relief because the Complaint does not allege that MSG continues to operate unlawfully or that Dr. Alvarez is not currently fulfilling his duties as medical director. [ECF No. 18], Mot. at 15. MSG's argument mischaracterizes the nature of the State Farm Plaintiffs' claim for declaratory relief and should be rejected.

Count VI applies to unpaid and allegedly underpaid claims submitted before the Complaint was filed as well as future claims submitted thereafter through the trial of this case.

MSG's argument has no application to the unpaid and allegedly underpaid claims submitted *before* the Complaint was filed because, as alleged in the Complaint, MSG and Dr. Alvarez were not in compliance with their medical director duties when these claims were submitted. Any future compliance does not alter this result.

Moreover, the Complaint sufficiently alleges the likelihood of future harm for any claims submitted *after* the Complaint was filed. This issue was addressed in *State Farm Mut. Auto. Ins. Co. v. Brown*, No. 16-80793-CIV, 2017 WL 1291995, at *1 (S.D. Fla. Mar. 30, 2017), which also involved the issue of medical director compliance. In *Brown*, the defendants moved to dismiss State Farm's claims for declaratory relief, which, like here, sought relief through the date of the trial. The court in *Brown* denied the motion to dismiss on this ground. *Id*. at *3. The court recognized "[w]hile a plaintiff must show that the feared harm is actual or imminent, not conjectural or hypothetical, '[o]ne does not have to await the consummation of the threatened injury to obtain preventative relief.'" *Id*. at *2 (*quoting Atlanta Gas Light Co. v. U.S. Dept. of Energy*, 666 F.2d 1359, 1364 n.7 (11th Cir. 1982)). The court found State Farm's allegations "that Defendants have knowingly submitted or caused to be submitted thousands of fraudulent bills and unlawful supporting documentation" was sufficient to establish the likelihood of future harm. *Id*. at *3.

The Complaint here also establishes the likelihood of future harm by alleging the Defendants engaged in an unlawful scheme through the submission of thousands of medical bills and related documentation. *See* [ECF No. 1], Compl. at ¶¶ 1; 127-130. Accordingly, the State Farm Plaintiffs have sufficiently alleged the likelihood of future harm.

MSG's assertion Count VI is "superfluous" of the claims for unjust enrichment and

17

violations of the FDUTPA is also without merit. In cases involving violations of the HCCA, the Eleventh Circuit has held an insurer is entitled "to obtain a declaratory judgment that it is not required to pay" the amount of the outstanding bills to the clinic operating in violation of the HCCA. *Vizcay*, 826 F.3d at 1330; *Silver Star*, 739 F.3d at 583-84.

MSG does not address *Vizcay* or *Silver Star*, and the cases MSG relies on are easily distinguishable. Notably, neither case involved automobile insurance schemes or violations of the HCCA. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1336 (S.D. Fla. 2012) (action concerning purchase of timeshares); *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996) (cited for general proposition that a district court has inherent authority to narrow issues in a case). In *Perret*, the purchasers sought a declaratory judgment finding the seller and trustee's sales methods were fraudulent, unconscionable, and inequitable. *Id*. at 1339. Based on this same conduct, the purchasers in *Perret* also asserted claims for violations of FDUPTA, breach of contract, and fraud, among other things. *Id*. at 1340. The court dismissed the declaratory relief claim, finding the declaration sought was essentially the same as the relief sought in the claims for violations of FDUTPA, breach of contract, and fraud. *Id*. at 1346-47. By contrast, the State Farm Plaintiffs' declaratory judgment claim seeks relief pertaining to pending claims and charges, whereas its FDUTPA and unjust enrichment claims seek to recoup payments already made. *Compare* [ECF No. 1], Compl., ¶¶ 126-130 with ¶¶ 109-122. In other words, the declaratory relief sought by the State Farm Plaintiffs is not the same as the relief sought by FDUTPA or unjust enrichment but is exactly the same relief *Silver Star* and *Vizcay* determined automobile insurers have a right to obtain.

18

**V.     MSG's Motion to Strike Should Be Denied**

MSG asks the Court to strike allegations in the Complaint relating to Dr. Alvarez's unlawful narcotics prescription practices at Advantacare of Florida and the sworn testimony of Jason Smook, a former **Advantacare of Florida** employee, who reported Dr. Alvarez to the DEA.  *See* [ECF No. 18], Mot. at 16–17.  Because these allegations have no relation to MSG, MSG lacks standing to raise this issue. *See, e.g., Kaloe Shipping Co. Ltd v. Goltens Service Co., Inc.*, 315 F. App'x 877, 879 (11th Cir. 2009) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). Dr. Alvarez's conduct took place at **Advantacare of Florida** prior to his retirement from the practice of medicine in March 2016.   In addition, although MSG ultimately succeeded Advantacare of Florida in 2017, MSG was not in operation in 2016.  *See* [ECF No. 1], Compl. at ¶ 2, 3, and 59.  On this basis alone the Court should deny the motion to strike.

MSG's motion to strike also fails on its merits.  Striking allegations is a drastic remedy disfavored by the courts. *See PNC Bank, N.A. v. Haghighi Family & Sports Med., P.A.*, 3:16-CV-1226-J-32MCR, 2017 WL 7311870, at *1 (M.D. Fla. June 2, 2017). "To prevail on a motion to strike, the movant must show that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Id.* at *2 (quotation omitted); *see also Harvey v. Home Depot U.S.A., Inc.*, No. 8:05-cv-936-T-24EAJ, 2005 WL 1421170, at *1 (M.D. Fla. June 17, 2005) (motion to strike will usually be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties"); *O'Keefe v. Darnell*, 192 F. Supp. 2d 1351, 1354 (M.D. Fla. 2002) (same).

Here, MSG does not establish Dr. Alvarez's unlawful narcotics prescription practices have no possible relation to this case. To the contrary, these allegations are relevant to a key issue in this case—whether Advantacare of Florida operated as an unlicensed clinic. *See* [ECF No. 1], Compl., ¶¶ 2, 37, and 38. A clinic engaged in the unlawful pre-signing of narcotic prescriptions for its patients would not qualify for the license exemption claimed by Advantacare of Florida. *See* Fla. Stat. § 400.9905(4)(g). To qualify for the "Wholly Owned" Exemption, Dr. Alvarez must have supervised the business activities of Advantacare of Florida and been legally responsible for its compliance with federal and state law. *See Performance III*, 315 F. Supp. 3d at 1305 ("A wholly owned clinic is not exempt from the HCCA's licensing requirement if it is not supervised in accordance with the HCCA."); *State Farm Mut. Auto. Ins. Co. v. Miami Med. Care Ctr., Inc.*, No. 15-cv-22660, 2016 WL 6962872, at *2 (S.D. Fla. Nov. 29, 2016) ("Barry Therapy was never wholly owned or controlled by Dr. Sutphin, as Dr. Sutphin did not control or supervise Barry Therapy's operations, finances, legal compliance, or any other aspect of the clinic."). The fact Dr. Alvarez engaged in unlawful conduct undermines any claims he supervised Advantacare of Florida's business activities and was legally responsible for its compliance with federal and state laws. As such, these allegations are highly relevant to this case and Advantacare of Florida's motion to strike is appropriately denied.

## VI.   Conclusion

For the foregoing reasons, MSG's Motion to Dismiss should be denied in its entirety. In the event the Court finds that any of the State Farm Plaintiffs' claims should be dismissed, however, any dismissal should be without prejudice.

Dated: December 16, 2019                    Respectfully submitted,

By: */s/ David I. Spector*
    DAVID I. SPECTOR, ESQ.
    Fla. Bar No. 086540
    JAMES J. DUFFY, ESQ.
    Fla. Bar No. 0068662
    JOSEPH F. VALDIVIA, ESQ.
    Fla. Bar No. 0107878
    HOLLAND & KNIGHT LLP
    222 Lakeview Avenue
    Suite 1000
    West Palm Beach, Florida  33401
    Telephone:  (561) 833-2000
    Facsimile:   (561) 650-8399
    david.spector@hklaw.com
    james.duffy@hklaw.com
    joseph.valdivia@hklaw.com

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019,  I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified in the list below via

transmission of Notices of Electronic Filing generated by CM/ECF.

| | |
|---|---|
| BRUCE S. ROSENBERG, ESQ.<br>Fla. Bar No. 994782<br>ROSENBERG LAW, P.A.<br>1895 Floyd Street,<br>Suite B<br>Sarasota, Florida  34239<br>Telephone:  (941) 373-6777<br>rosenberg@rosenberglawpa.com<br><br>GREGORY A. ZITANI, ESQ.<br>Fla. Bar No. 188956<br>LAW OFFICES OF GREGORY A. ZITANI, PLLC<br>4046 Sawyer Road<br>Suite D<br>Sarasota, Florida  34233<br>Telephone:  (941) 552-0373<br>Facsimile:   (941) 377-3886<br>greg.zitani@westcolaw.com<br><br>*Attorneys for CRN Receivable Management LLC, Advantacare Multi-Specialty Group, LLC, Kerriann Fitzpatrick, f/k/a Kerriann Herzog, John Mancuso, and Kenneth Howe* | CHAD A. BARR, ESQ.<br>Fla. Bar No. 055365<br>Chad Barr Law<br>986 Douglas Avenue<br>Altamonte Springs, FL 32714<br>(407)599-9036 – Office<br>chad@chadbarrlaw.com<br><br>*Attorney for Advantacare of Florida, LLC, and Frank Severiano Alvarez, Jr., M.D.* |

#71963151_v3