UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and STATE FARM FIRE
AND CASUALTY COMPANY,**

**Plaintiffs,**

**v.**                                              **Case No:  6:19-cv-1837-Orl-41LRH**

**ADVANTACARE OF FLORIDA, LLC,
CRN RECEIVABLE MANAGEMENT
LLC, ADVANTACARE MULTI-
SPECIALTY GROUP, LLC,
KERRIANN FITZPATRICK, JOHN
MANCUSO, KENNETH HOWE and
FRANK SEVERIANO ALVAREZ, JR. ,**

**Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court on four Motions to Dismiss ("Motions") and the corresponding Responses. The Motions are at docket entries 17, 18, 19, and 26. The Responses are at docket entries 32, 33, 34, 35, and 36. Each motion contains a motion to dismiss and at least one motion to strike. The Court will first provide a brief overview of the Complaint. Many of the arguments in the motions overlap, so the Court will address the motions by issue and identify which motions seek relief based on those issues.

## I.   BACKGROUND

The Complaint (Doc. 1) alleges an unlawful and fraudulent scheme perpetrated by Defendants. (*Id.* ¶ 1). Per the Complaint, Plaintiffs are insurance companies, and Defendants are related companies and individuals involved in running a medical practice. (*Id.* ¶¶ 7–15).

Essentially, the Complaint alleges that Defendants unlawfully schemed to obtain, and did obtain, payments from Plaintiffs "through the submission of thousands of medical bills and related documentation for services purportedly provided to individuals involved in automobile accidents and eligible for Personal Injury Protection Coverage ('PIP Benefits') and Medical Payments Coverage ('MPC') (collectively, 'No-Fault Benefits') under [Plaintiffs'] automobile insurance policies." (*Id.* ¶ 1). Allegedly, Defendant Advantacare of Florida, LLC ("Advantacare of Florida"), a multidisciplinary medical practice, operated illegally in violation of the Florida Health Care Clinic Act ("HCCA,"), Fla. Stat. § 400.990 *et. seq.* (*Id.* ¶¶ 2, 9, 30).

Per the HCCA, it is unlawful for a healthcare clinic to operate without a license from Florida's Agency for Health Care Administration ("AHCA") unless it meets one of the specifically enumerated exemptions. *See* Fla. Stat. § 400.991; (Doc. 1 ¶ 17). According to the Complaint, Advantacare of Florida avoided licensure by falsely claiming the "wholly owned" exemption to the HCCA. (Doc. 1 ¶ 31). The "wholly owned" exemption allows clinics to avoid licensure if they are "wholly owned by one or more licensed health care practitioners . . . ." Fla. Stat. § 400.9905(4)(g). The Complaint alleges that Defendant Frank Severiano Alvarez Jr., M.D. ("Dr. Alvarez") held himself out as the owner of Advantacare of Florida in order to claim the exemption, when in actuality, Defendants Keriann Fitzpatrick,[1] John Mancuso, and Kenneth Howe—who are not licensed health care professionals—actually owned the business, at least in part. (Doc. 1 ¶¶ 13–15, 31–32). Plaintiffs claim that Defendants did this to obtain payments from Plaintiffs without having to be subject to the oversight and obligations licensure would require. (*Id.* ¶ 33). And, according to Plaintiffs, because Advantacare of Florida was not licensed and was unlawfully claiming the "wholly owned" exemption, the bills submitted to Plaintiffs for No-Fault Benefits

---

[1] Keriann Fitzpatrick was formerly known of as Keriann Herzog.

were unlawful, and thus, Plaintiffs were not required to make payments. (*Id.* ¶¶ 34, 108). Further, the Complaint adds that Defendant CRN Receivable Management, LLC ("CRN Receivable"), which was owned and controlled by Fitzpatrick, received ninety-nine percent of the revenue obtained by Advantacare of Florida in 2016. (*Id.* ¶¶ 10, 44–45).

Plaintiffs allege that this scheme continued from about January 2013 to sometime in 2016, when Dr. Alvarez "retired" from the practice of medicine. (*Id.* ¶¶ 2, 60). Then, the Complaint alleges that Fitzpatrick, Mancuso, and Howe continued to operate Advantacare of Florida, but under a new entity. (*Id.* ¶ 61). This new entity is Defendant Advantacare Multi-Specialty Group, LLC ("Advantacare MSG"). (*Id.*). The Complaint alleges that Fitzpatrick, Mancuso, and Howe did apply to the AHCA for a license for each of Advantacare MSG's prospective locations, which they received. (*Id.* ¶¶ 62–63). Under the HCCA, each licensed clinic is required to have a medical director, who has numerous statutorily mandated responsibilities. Fla. Stat. § 400.9935(1). The application for licensure represented that Dr. Alvarez was the medical director for five of seven of these locations, which were operated by Advantacare of Florida previously. (Doc. 1 ¶¶ 65–66). The application also represented that Dr. Alvarez was present at Advantacare MSG five days per week—at a different location each day—in order to fulfill his oversight responsibilities. (*Id.* ¶ 66). However, the Complaint states that in reality, Dr. Alvarez was present at Advantacare MSG only one day per month and otherwise failed to provide day-to-day supervision of Advantacare MSG, in violation of the HCCA. (*Id.* ¶ 67).

Plaintiffs further allege that during this time—and during the Advantacare of Florida days—Advantacare MSG submitted bills and records to Plaintiffs with fraudulent patterns. (*Id.* ¶¶ 68–71). According to Plaintiffs, because Dr. Alvarez did not comply with his statutory duty as medical director, he failed to notice these problems and failed to take corrective actions. (*Id.* ¶¶ 71–

78). Similarly, Plaintiffs allege that Dr. Alvarez failed to ensure that all health care practitioners at Advantacare MSG had appropriate certification or licensure in keeping with the HCCA. (*Id.* ¶¶ 79–86). Thus, the Complaint alleges that Advantacare MSG was not in compliance with the HCCA, and so all bills submitted to Plaintiffs for No-Fault Benefits were unlawful and thus non-compensable. (*Id.* ¶ 130).

The Complaint brings six claims for relief. Counts One and Four are for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; Counts Two and Five are for unjust enrichment; and Counts Three and Six are for declaratory judgment. The first three Counts relate to Advantacare of Florida, and Counts Four through Six are for conduct taking place within the Advantacare MSG timeframe.

## II.   MOTIONS TO DISMISS

### A.   Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

**B.    Analysis**

Defendants make several general arguments that relate to multiple Counts or the Complaint as a whole, and several Count-specific allegations. The Court will first address the general arguments and will then address the Count-specific arguments.

As an initial matter, the Court notes that the Motions frequently request the Court weigh the allegations in the Complaint or the attached exhibits and make factual findings regarding them. This the Court will not do because, as noted above, at this stage every allegation in the Complaint is taken as true. The Court will not read into various allegations or testimony to try and weigh facts at this point in the proceedings. *Chartis Ins. Co. v. Freeman*, No. CV 111-193, 2013 U.S. Dist. LEXIS 200065, at *9 (S.D. Ga. Mar. 18, 2013) ("At the motion to dismiss stage, the Court cannot weigh facts or examine evidence, but rather must construe all factual allegations in favor of [plaintiff].").

*1.    General Arguments Relating to Multiple Counts*

a.    Insufficient Allegations of Ownership

Counts One, Two, and Three are predicated on Plaintiffs' contention that Dr. Alvarez, Advantacare of Florida, and Fitzpatrick, Mancuso, and Howe held Advantacare of Florida out as being "wholly owned" by Dr. Alvarez, when in reality it was owned by Fitzpatrick, Mancuso, and Howe—at least in part. Two of the Motions (Doc. Nos. 17, 26) argue that the Complaint contained

"no allegations" that Dr. Alvarez did not maintain decision making authority and that "common sense" indicates that Fitzpatrick, Mancuso, and Howe were merely employees and not co-owners. (Doc. 17 at 11–12).

However, the Complaint contains sufficient allegations to make Plaintiffs' claim that the clinic was not wholly owned by Dr. Alvarez plausible on its face. *See Iqbal*, 556 U.S. at 678. Indeed, paragraphs thirty-nine to fifty-nine contain multiple specific examples, with citations to deposition testimony, about the ways in which Dr. Alvarez's position at Advantacare of Florida did not comport with ownership. For example, the Complaint alleges that Dr. Alvarez did not wholly own the stock of Advantacare of Florida (Doc. 1 ¶ 41), contains testimony of employees stating Dr. Alvarez was not the sole owner, (*id.* ¶ 42), and alleges that Dr. Alvarez made no capital investments when another entity, allegedly owned by Dr. Alvarez, Mancuso, and Fitzpatrick, purchased membership interests in Advantacare of Florida, (*id.* ¶¶ 41–43). Thus, there are sufficient allegations that make Plaintiffs' claims that Dr. Alvarez did not wholly own Advantacare of Florida sufficiently plausible.

b.    <u>Statute of Limitations</u>

Claims under FDUTPA and claims for unjust enrichment must be brought within four years. Fla. Stat. § 95.11(3). Defendants Advantacare of Florida and Dr. Alvarez summarily state that, to the extent Defendants are requesting relief for transactions completed before September 24, 2014, these claims must be dismissed. (Doc. 26 at 4). Defendants' Motion has no analysis and merely states that the claim must be dismissed as time-barred on the face of the Complaint.

"A statute of limitations bar is an affirmative defense and plaintiffs are not required to negate an affirmative defense in their complaint." *Beach Cmty. Bank v. CBG Real Estate LLC*, 674 F. App'x 932, 934 (11th Cir. 2017) (internal quotation omitted). "Thus, at the Rule 12(b)(6) stage

the district court may dismiss a claim on statute of limitations grounds only if it is apparent from the face of the complaint that the claim is time-barred." *Id.* (internal quotation omitted). And, "it is beyond dispute" that the burden is on the party asserting the affirmative defense to establish the elements of the affirmative defense. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1292 (11th Cir. 2005). Moreover, "the perimeters of this limitations period are appropriately defined by reference to the delayed discovery doctrine." *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 U.S. Dist. LEXIS 107005, at *43 (S.D. Fla. Sep. 21, 2011). The delayed discovery doctrine provides that the cause of action does not accrue until the plaintiff knew or should have known of the act(s) giving rise to the cause of action. *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1170 (S.D. Fla. 2015) (citing *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000)). The delayed discovery doctrine implicates factual issues which the Court cannot resolve on a motion to dismiss. *Kugler*, 2011 U.S. Dist. LEXIS 107005 at *43.

The premise of Plaintiffs' claims are that Defendants had a "secret arrangement" to hold Dr. Alvarez out as the sole owner of Advantacare of Florida when in reality that was not the case. (Doc. 1 ¶ 89). Plaintiffs claim to have been defrauded as a result of this arrangement and Defendants' failure to disclose the arrangement. (*Id.* ¶ 91). These allegations are sufficient because they imply that Plaintiffs did not know of the purported secret arrangement. And, Defendants entirely fail to address why the face of the Complaint makes it clear that the claims are time-barred. Thus, Defendants have failed to meet their burden, so this argument is due to be denied. And, "[b]ecause the running of any applicable statute of limitations is not apparent on the face of the complaint, the Court denies [defendant's] motion to dismiss on this basis." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.*, 389 F. Supp. 3d 1137, 1151 (S.D. Fla. 2019).

<u>c.</u>      <u>Improper Joinder in an Attempt to Create Federal Jurisdiction</u>

Defendants Advantacare of Florida and Dr. Alvarez argue that Plaintiffs "improperly joined each Defendant in this action in an attempt to manufacture federal court jurisdiction." (Doc. 26 at 4). That is, Defendants contend that Plaintiffs cannot show that their claims against this group of Defendants arises out of the same transaction or occurrence, since they are based on a multitude of different insurance claims that Plaintiffs paid. Thus, Defendants Advantacare of Florida and Dr. Alvarez argue the claims against each Defendant should be severed. Then, Defendants argue that each Plaintiff must be able to satisfy the amount in controversy with respect to each Defendant.

As Plaintiffs point out, counsel for Defendants Advantacare of Florida and Dr. Alvarez made the exact—identical—argument on this point in a similar case in the Southern District of Florida. *Health & Wellness*, No. 18-23125-Civ-Scola, Doc. 42. In that well-reasoned case, Judge Scola denied these arguments. Because Defendants copied and pasted their argument, the Court sees fit to copy and paste the applicable parts of the denial:

> 'Where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement,' 28 U.S.C. § 1367 'authorize[s] supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.' *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549[] (2005). Thus, so long as one of the State Farm plaintiffs establishes more than the threshold $75,000-in-controversy amount as to [defendant], the jurisdictional requirement is met.

*Health & Wellness*, 389 F. Supp. 3d at 1151–52 (parallel citations omitted).

Plaintiffs claim Dr. Alvarez and Advantacare of Florida are jointly liable for payments made specifically to Advantacare of Florida, where Dr. Alvarez claimed to be the sole owner. And, Plaintiffs allege that Dr. Alvarez is jointly liable for payments made to Advantacare MSG, where Dr. Alvarez served as the medical director, treated patients, oversaw patients' treatment, signed records and bills, and played an integral role in the alleged scheme. Plaintiff State Farm Mutual

alleges Advantacare of Florida billed it more than $9 million and that it paid Advantacare of Florida over $4 million. (*See* Compl. Ex. Doc. 1-1). Plaintiff State Farm Fire alleges Advantacare of Florida billed it for $147,504.76 and that it paid Advantacare of Florida $74,351.37. (*Id.*).

> Where defendants are alleged to be jointly liable, damages are appropriately aggregated against multiple defendants. *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1368 (S.D. Fla. 2014) (Altonaga, J.) (finding the plaintiff had satisfied the amount-in-controversy threshold by pleading joint liability against a clinic, its owner, its medical director, and a staffing company because it did "not appear beyond a legal certainty that [the staffing company] can avoid joint and several liability for its participation in the scheme as alleged"); *State Farm Mut. Auto. Ins. Co. v. Advance Med. Associates & Forme Rehab, Inc.*, 1:17-CV-21737-UU, 2017 WL 5953295, at *4 (S.D. Fla. Aug. 17, 2017) (Ungaro, J.) ("Plaintiffs can aggregate their claims against Defendants if Plaintiffs plausibly allege that Defendants might be jointly liable."). [Defendants] ha[ve] left [Plaintiffs'] many joint-liability allegations . . . unrebutted. As such, his claim that the Court lacks jurisdiction over this case is without merit.

*Health & Wellness*, 389 F. Supp. 3d at 1152. This Court agrees with Judge Scola's well-reasoned analysis and finds that the situation facing these Defendants is the same as those in Judge Scola's case. Accordingly, for the reasons stated by Judge Scola in *Health & Wellness*, Defendants Advantacare of Florida's and Dr. Alvarez's argument that the Court lacks jurisdiction over this case via improper joinder is without merit.

### d.    Economic Loss Rule

Defendants argue that the economic loss rule bars Plaintiffs claims and states that "it would be incomprehensible for the State Farm Plaintiffs to be able to recover in tort against the individual Defendants for fraud . . . ." (Doc. 26 at 20). This argument is also identical to an argument made before Judge Scola in *Health & Wellness*. 389 F. Supp. 3d at 1145–46. However, unlike in *Health & Wellness*—where this argument was rejected—Plaintiffs in this case do not bring a claim for

fraud, *or any tort* for that matter.[2] Therefore, because the economic loss rule only applies to tort claims, it cannot bar any of Plaintiffs' claims here. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1030 (11th Cir. 2017) (quoting *Tiara Condo. Assoc., Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013)). Accordingly, this argument will be denied.

### 2.    *FDUTPA—Counts One and Four*

Defendants assert various arguments in the Motions as to why the FDUTPA claims should fail. The Court will address each in turn.

### a.    Failure to Adequately Plead

The Motions (Doc. Nos. 17, 18, 26) argue that the Complaint fails to adequately plead a claim for relief under FDUTPA. FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). A claim under FDUTPA has three elements: "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Orange Lake Country Club v. Castle Law Grp., P.C.*, No. 6:17-cv-1044-Orl-31DCI, 2018 U.S. Dist. LEXIS 52511, *13 (M.D. Fla. Mar. 29, 2018) (citing *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)).

Defendants argue that the Court should dismiss Plaintiff's FDUTPA claims for failure to comply with the heightened pleading requirements of Rule 9(b). Rule 9(b) imposes a heightened

---

[2] As to committing a tortious act, unjust enrichment is "not considered a 'tortious act' under Florida law." *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1137 (M.D. Fla. 2012). It "is a noncontractual obligation that is treated procedurally as if it were a contract." *Procacci v. Harllee*, 95 So. 3d 997, 999 (Fla. 2d DCA 2012) (quoting *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So.3d 877, 881 (Fla. 1st DCA 2010)); *see also Parker v. Am. Traffic Sols., Inc.*, No. 14-CIV-24010-MORE, 2015 U.S. Dist. LEXIS 105522, at *23 (S.D. Fla. Aug. 10, 2015) ("Unjust enrichment is not a tort in the traditional sense, but it is a tool created by courts to provide a remedy for parties that have been unfairly deprived of their property." (citing *Commerce P'ship 8098 Ltd. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997))).

pleading standard for claims that sound in fraud and requires claims of fraud to be pleaded "with particularity [as to] the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Harris v. Nordyne, LLC*, No. 14-CIV-21884-BLOOM/Valle, 2014 U.S. Dist. LEXIS 189248, *8 (S.D. Fla. Nov. 13, 2014) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002)). "However, 'Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief.'" *Id.* at *8–9 (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (internal quotations omitted).

However, district courts in the Eleventh Circuit are split as to whether Rule 9(b) applies to FDUTPA claims. One line of cases holds that Rule 9(b) applies to the extent that the FDUTPA claims are based in fraud. *Harris*, 2014 U.S. Dist. LEXIS 189248, at*10–11 (collecting cases). The other line holds that 9(b) does not apply to FDUTPA claims as FDUTPA's elements are already more particularized than those of common law fraud. *Id.* at *11–12 (collecting cases). This

Court need not decide which line of cases controls as the Complaint satisfies the heightened pleading standard.

Regarding Count One, the Complaint describes in detail an unfair and deceptive scheme allegedly perpetrated by Advantacare of Florida, Dr. Alvarez, Fitzpatrick, Mancuso, and Howe to avoid licensure under the AHCA by holding Advantacare of Florida out as being wholly owned by Dr. Alvarez, when in reality, Fitzpatrick, Mancuso, and Howe owned the practice at least in part. The Complaint alleges that these Defendants worked together to avoid licensure so they could avoid oversight and obtain payments from Plaintiffs and other insurance companies and that Plaintiffs were misled because they relied on Advantacare of Florida's wholly owned status when processing payments. (Doc. 1 ¶¶ 31–34, 89–92). Further, the Complaint alleges the ways that these Defendants profited from the scheme. (*Id.* ¶¶ 44–45). The Complaint states that this occurred over a period of about three years—from 2013 to 2016. (*Id.* ¶¶ 37, 62). It provides specific instances of Defendants falsely stating that Dr. Alvarez wholly owned Advantacare of Florida, (*id.* ¶¶ 38, 92), and provides specific facts as well as testimony regarding these Defendants' conduct that tends to indicate that Advantacare of Florida may not have been wholly owned by Dr. Alvarez. (*Id.* ¶¶ 40–52). And, the Complaint gives specific examples of ways Dr. Alvarez failed to supervise Advantacare of Florida as required by Florida law to retain the wholly owned exemption. (*Id.* ¶¶ 55–59). Finally, the Complaint states that these Defendants' unlawful scheme caused damage to Plaintiffs in the form of more than $4.5 million in insurance payouts. (*Id.* ¶ 99).

In Count Four, the Complaint also describes in detail the scheme allegedly perpetrated by Defendants Advantacare MSG, Dr. Alvarez, Fitzpatrick, Mancuso, and Howe to provide false information to the AHCA to obtain licensure and receive unlawful payments from Plaintiffs and other insurance companies. (*See generally id.* ¶¶ 60–86, 110–121). The Complaint gives specific

examples of the false information provided in order to obtain licensure in 2017, including that Dr. Alvarez was acting as medical director, when in reality he was largely absent. (*Id.* ¶¶ 63, 66–67). Plaintiffs also provide other specific examples regarding how Dr. Alvarez failed to be a medical director as required by Florida law, such as how he failed to utilize a systematic review of charts and bills and how he failed to ensure massage therapists possessed the required licenses. (*Id.* ¶¶ 68–86). The Complaint alleges that because of Defendants' misrepresentations about Dr. Alvarez, Defendants submitted false claims for payment that Plaintiffs wrongfully paid to the tune of over $2.9 million, as well as that Plaintiffs relied on Defendants' misrepresentations in making the payments. (*Id.* ¶¶ 113–120).

"In sum, even if the FDUTPA claims were required to meet the pleading requirements of Rule 9(b), the instant Complaint satisfies that heightened standard." *Office of the AG v. Moving & Storage Accounting*, No. 18-cv-63144-MORENO/SELTZER, 2019 U.S. Dist. LEXIS 49435, *24 (S.D. Fla. Mar. 22, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 74597. Defendants are sufficiently on notice of the nature of Plaintiffs' claims and the grounds upon which they are based for Counts One and Four. However, some of the Motions also argue that Plaintiffs failed to state a claim for FDUTPA not only pursuant to Rule 9(b) but also Rule 12(b)(6). In light of the Court's findings that Plaintiffs have adequately stated their FDUTPA claims under the heightened pleading standard, the Court need not address these arguments.

### b.      Piercing the Corporate Veil

Defendants Fitzpatrick, Mancuso, and Howe argue that Plaintiffs fail to adequately allege why the corporate veil of Advantacare MSG should be pierced to hold them, members, liable. However, Plaintiffs are not seeking to pierce the corporate veil, and Count Four's FDUTPA claim is not seeking to hold Plaintiffs liable for Advantacare MSG's acts by virtue of their status as

members. Instead, Count Four seeks to hold Fitzpatrick, Mancuso, and Howe individually and personally liable for their participation in the alleged scheme. (*See* Doc. 1 ¶¶ 110–119 (making no allegations regarding these Defendants' status as shareholders but seeking to hold them "jointly and severally liable" for their "intentional and essential role in furthering the unlawful scheme.")). Therefore, the arguments regarding piercing the corporate veil will be denied.

<u>c.</u>   <u>Medical Director Requirements</u>

Defendant Advantacare MSG argues in relation to Count Four, in addition to its Rule 9(b) argument, that as a matter of law the allegations regarding Dr. Alvarez's conduct as a medical director are insufficient to show that he did not meet the statutory minimum requirements that would make his actions deceptive or unfair. The Complaint alleges, among other things, that to obtain licensure Dr. Alvarez indicated to the AHCA that he was the medical director, as required by section 400.9935, Florida Statutes, and would be working five days a week at the various Advantacare MSG locations, but that instead, he worked one day a month. (*Id.* ¶¶ 66–67). Advantacare MSG argues that Plaintiffs cannot show that the AHCA would not have granted Advantacare MSG a license had the AHCA been aware that Dr. Alvarez was only at the clinics one day a month instead of five days a week. However, the Complaint also alleges that Dr. Alvarez failed to systematically review billings, (*id.* ¶¶ 68–71), in violation of section 400.9935(1)(g), and that Dr. Alvarez failed to ensure all health care practitioners maintained the appropriate licenses, (*id.* ¶¶ 79–84), in violation of section 400.9935(1)(d), Florida Statutes.

At the motion to dismiss stage, the Court does not need to consider whether the allegations, alone, are sufficient for Plaintiffs to prevail on their claims. Instead, the Court must find that the allegations "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Indeed, Plaintiffs' allegations that Dr. Alvarez did not maintain the schedule he claimed to maintain in

order to obtain licensure, with the other allegations mentioned above, are sufficient. These allegations make it plausible that Advantacare MSG was deceptive with the ACHA to obtain licensure and then operated unfairly or deceptively by allowing Dr. Alvarez to shirk his duties as a medical director. Thus, this argument will be denied.

        d.      <u>Plaintiffs not "Consumers"; Submission of Insurance Claims not</u>

                <u>"Trade or Commerce"</u>

As noted, Counts Two and Four of the Complaint are based on alleged violations of FDUTPA. FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "FDUTPA authorizes a private cause of action for actual damages by any 'person' who has suffered a loss because of a defendant's violation of the statute." *State Farm Mut. Auto. Ins. Co. v. Feijoo*, No. 1:18-cv-23329-KMM, 2019 U.S. Dist. LEXIS 93343, at *13 (S.D. Fla. June 3, 2019) (quoting Fla. Stat. § 501.211(2)). In 2001, the Florida Legislature amended FDUTPA's standing provision by replacing the word 'consumer' with the word 'person.' *Id.* "There is currently a split in authority regarding whether the 2001 amendment extended FDUTPA to non-consumers," and neither the Florida Supreme Court nor the Eleventh Circuit has resolved the split. *Id.* (collecting cases).

Defendants Advantacare of Florida and Dr. Alvarez, in their Motion (Doc. 26), assert that Plaintiffs "fail[] to allege that [they are] a 'consumer' and that [their] obligation to pay is a 'consensual or business dealing.'" (*Id.* at 16). Therefore, these Defendants argue that Plaintiffs are not consumers, the submission of insurance claims are not trade or commerce, and thus Plaintiffs are not covered by the protections of FDUTPA. Plaintiffs counter that the FDUTPA is not so limited. Plaintiffs are correct.

At least three of Florida's District Courts of Appeal[3] have categorically held that "an entity [i]s not required to be a consumer in order to have standing to bring a FDUTPA claim."[4] *Feijoo*, 2019 U.S. Dist. LEXIS 93343, at *14 (quoting *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (collecting cases)); *see also Envtl. Mfg. Sols., LLC v. Fluid Grp. Ltd.*, No. 6:18-cv-156-Orl-40KRS, 2018 U.S. Dist. LEXIS 131382, at *48–50 (M.D. Fla. May 9, 2018) (holding same). Absent clear direction from the Florida Supreme Court on an issue, this Court is "bound to follow" decisions of the state's intermediate appellate courts unless there is some persuasive indication that the Florida Supreme Court would decide the issue differently. *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (citation omitted). Thus, Defendants' argument that Plaintiffs, as insurers, cannot be protected by FDUTPA fails.

Furthermore, "trade or commerce" encompasses healthcare services. *Health & Wellness*, 389 F. Supp. 3d at 1149. Under FDUTPA, "trade or commerce" includes "providing" or "offering . . . any good or service." Fla. Stat. § 501.203(8). The definition of trade or commerce is broad, and FDUTPA is to be construed liberally. *Health & Wellness*, 389 F. Supp. 3d at 1149 (citing *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008); Fla. Stat. § 501.202). Other courts in this district have also permitted similar FDUTPA claims in this context go forward. *Id.* at 1149–1150 (collecting cases). Accordingly, Defendants Advantacare of Florida's and Dr. Alvarez's arguments at this juncture fail.

    3.       *Unjust Enrichment—Counts Two and Five*

---

[3] Florida's Fifth District Court of Appeal has not ruled on the issue.

[4] This Court makes no determination at this stage regarding whether Plaintiffs are actually "consumers," as they argue in their Motion, because such a finding is not necessary to establish standing to bring an FDUTPA claim.

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

<u>a.</u>    <u>Conferred a Benefit</u>

The Motions (Doc. Nos. 17, 19, 26) all argue that at least one of the unjust enrichment counts should be dismissed for failure to allege that Plaintiffs *directly* conferred a benefit on the various Defendants. These Defendants contend that Plaintiffs are required to show that each Defendant directly received a benefit and that Plaintiffs have not done so. Specifically, Fitzpatrick, Mancuso, Howe, CRN Receivables, and Dr. Alvarez argue that no "direct benefit" was relayed to them. CRN Receivables' argument only pertains to Count Two, but the other Defendants argue this as to both unjust enrichment counts.  The cases relied on by Defendants for these propositions, while somewhat factually distinguishable, are also at vastly different procedural postures than the current matter. One of Defendants' cases, *Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937 (11th Cir. 2018), was before the court on a motion for judgment as a matter of law. And the other, *Kopel v. Kopel*, 117 So. 3d 1147 (Fla. 3d DCA 2013), *aff'd in part, quashed in part,* 229 So. 3d 812 (Fla. 2017), was an appeal of the trial court's entry of final judgment.

At this stage in the proceedings, these arguments are unpersuasive. For purposes of a motion to dismiss, the Court must make all reasonable inferences in favor of Plaintiffs. And, at this point, it is reasonable to infer that, as alleged by Plaintiffs, "[w]hen defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly." *State Farm Mut.*

*Auto. Ins. Co. v. Brown*, No. 16-80793-CIV, 2017 U.S. Dist. LEXIS 57019, at *20 (S.D. Fla. Mar. 29, 2017). And, "[j]ust because the benefit conferred by a plaintiff on a defendant did not pass directly from that plaintiff to that defendant—but instead passed through a third party—does not preclude an unjust-enrichment claim." *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2014 U.S. Dist. LEXIS 200853, *11–12, (S.D. Fla. March 6, 2014) (quoting *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) (collecting cases)).

As discussed above, the Complaint adequately alleges that Dr. Alvarez was not the sole owner of Advantacare of Florida and that Fitzpatrick, Mancuso, and Howe were also, at least in part, owners. Dr. Alvarez, Fitzpatrick, Mancuso, and Howe allegedly were part of the scheme to remain unlicensed as Advantacare of Florida and then to operate illegally as Advantacare MSG. The Complaint alleges that as a result of these schemes, Plaintiffs paid Advantacare of Florida and Advantacare MSG millions of dollars that they were not legally obligated to pay. It is a reasonable inference that Dr. Alvarez, Fitzpatrick, Mancuso, and Howe, as alleged owners of Advantacare of Florida, benefitted from the millions paid by Plaintiffs to Advantacare of Florida. And, it is a reasonable inference that Fitzpatrick, Mancuso, and Howe, as owners of Advantacare MSG, and Dr. Alvarez, as medical director paid by Advantacare MSG, benefitted from the millions paid to Advantacare MSG by Plaintiffs. Whether or not the evidence ultimately shows a benefit flowed to any of these Defendants is a matter for summary judgment or trial.

Regarding CRN Receivables, the Complaint alleges that CRN Receivables, which was owned by Fitzpatrick, was the beneficiary of ninety-nine percent of the revenue that Plaintiffs paid to Advantacare of Florida. Accordingly, the Complaint has alleged that CRN Receivables was a part of the scheme and received a direct benefit from Plaintiffs—it just passed through Advantacare of Florida first. Thus, these arguments fail at this stage.

b.      Failure to Plead Other Elements

CRN Receivables as well as Fitzpatrick, Mancuso, and Howe also argue that because the Complaint fails to allege that they received a benefit, Plaintiffs cannot adequately allege the remaining elements of unjust enrichment. However, as stated above, Plaintiffs did adequately allege for purposes of a motion to dismiss that these Defendants received a benefit from Plaintiffs. Because these Defendants make no other argument regarding the sufficiency of the allegations for the other elements, the Court will deny this argument and move on.

However, CRN Receivables does contend that the business arrangement with Advantacare of Florida is perfectly legal and is known of as factoring. The Court notes that there is no claim that CRN Receivables itself is operating unlawfully, rather the Complaint alleges that Advantacare of Florida was operating illegally and that CRN Receivables played a knowing part in perpetuating that scheme. This argument fails.

c.      Piercing the Corporate Veil

Defendants Fitzpatrick, Mancuso, and Howe again argue that the Complaint fails to make proper allegations regarding piercing the corporate veil sufficient to hold them liable for the actions of Advantacare MSG. However, as stated before, the Complaint is not seeking to hold Fitzpatrick, Mancuso, and Howe liable for the actions of Advantacare MSG due to their status as members. The Complaint is seeking to hold these Defendants jointly and severally liable with Advantacare MSG due to their individual actions, which they took as owners and controllers of the clinic in order to perpetuate the allegedly illegal and fraudulent scheme and for retaining the benefits of said scheme. This argument fails.

d.      Wholly Owned

Defendant Advantacare MSG argues that because the Complaint fails to show that Advantacare of Florida was not wholly owned by Dr. Alvarez, this claim must fail. However, the claim for unjust enrichment brought against Advantacare MSG is separate from the "wholly owned" allegations regarding Advantacare of Florida. Advantacare MSG is being accused of operating unlawfully due to Dr. Alvarez's failure to act as a medical director. Regardless, as discussed previously, the Complaint does adequately allege that Advantacare of Florida was not wholly owned by Dr. Alvarez sufficient for these claims to proceed.

4. *Declaratory Judgment—Counts Three and Six*

Count Three is against Advantacare of Florida, and Count Six is against Advantacare MSG. Each Defendant seeks to dismiss the claim against it. Both counts seek judgment declaring "all outstanding unpaid and allegedly underpaid claims and charges that [Defendant] submitted, or caused to be submitted, to [Plaintiffs] to date and through [this case] . . . are not owed." (Doc. 1 at 29–30, 34). The purported basis for such judgment is that services that are not "lawfully provided" are not due to be paid by Plaintiffs pursuant to sections 627.736 and 400.9935, Florida Statutes.

a. Likelihood of Future Injury

Both Advantacare Defendants argue that Plaintiffs do not have standing to bring their claims for declaratory judgment because the Complaint fails to allege a likelihood of future injury. The Court notes that while neither Motion actually mentions "standing," that is the basis for the arguments. Advantacare MSG quotes *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co* for the contention that in order to demonstrate that there is a case or controversy satisfying Article III when a plaintiff is seeking declaratory relief, a plaintiff "must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" (Doc. 18 at 15

(quoting 925 F.3d 1205, 1211 (11th Cir. 2019)). Advantacare of Florida cites no legal authority for its argument.

Plaintiffs, as insurers, are entitled to seek declaratory judgment "that [they are] not required to pay [defendant health clinic] the amount of the outstanding bills." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). The claims are outstanding, which means that they are owed; Plaintiffs may be required to pay these potentially unlawful claims, which is certainly a future injury. And, "[b]ecause State Farm alleges that Defendants have knowingly submitted or caused to be submitted thousands of fraudulent bills and unlawful supporting documentation, State Farm is not required to suffer the allegedly inevitable harm it seeks to avoid for an actual case or controversy to exist." *Brown*, 2017 U.S. Dist. LEXIS 57019, at *8. Defendants' arguments on this point are all due to be denied.

b.   Superfluous

Both Advantacare Defendants believe that the declaratory judgment claims should be dismissed as superfluous of the other claims against them. Both Motions argue that "whether [Defendant's] services were lawfully rendered will be decided under either of the other two claims against [Defendant]." (Doc. 18 at 16; Doc. 26 at 22). Again, Plaintiffs are entitled to declaratory judgment that they are not required to pay outstanding bills to Defendant clinics. *Silver Star*, 739 F.3d at 548. Accordingly, the Court does not find that Counts Three and Six are superfluous.

c.   Claims Submitted were Unlawful/fraudulent, Entity Operated

Unlawfully

In three sentences, Advantacare of Florida contends that the Complaint fails to allege that any claims submitted by Advantacare of Florida were unlawful or fraudulent or that Advantacare of Florida was operating unlawfully. Per Defendant, "[t]herefore, there is no need for declaratory

relief." (Doc. 26 at 21–22). First, the Court notes that this unsupported argument fails to meet Defendant's burden and is due to be denied on that basis. Second, as highlighted previously, the Complaint is replete with factual allegations that create an inference that Advantacare of Florida was operating unlawfully by improperly and fraudulently claiming the "wholly owned" exemption to licensure. Third, if Advantacare of Florida was operating unlawfully by not being licensed when it should have been, all charges made by the clinic "are unlawful charges, and therefore are noncompensable and unenforceable." Fla. Stat. § 400.9935(3). Thus, by virtue of the fact that the Complaint sufficiently alleges facts regarding Advantacare of Florida operating illegally, the Complaint alleges facts to create an inference that the charges submitted to Plaintiffs were illegally submitted. Indeed, the Complaint specifically alleges that "none of the services for which Advantacare of Florida submitted bills to [Plaintiffs] were 'lawfully provided.'" (Doc. 1 ¶ 108). The declaratory judgment claims will not be dismissed.

### III.   MOTIONS TO STRIKE

Each Motion seeks to strike at least one paragraph from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).[5] And, Defendants Dr. Alvarez and Advantacare of Florida seek to strike Plaintiffs' claim for attorney's fees within the Complaint as improper. As a threshold matter, the Court notes that motions to strike are amongst the motions that require parties to meet and confer pursuant to Local Rule 3.01(g). None of the motions to strike contain a certificate of conferral or any other indication that 3.01(g) was complied with. The motions are due to be denied on that basis alone.

### A.   Rule 12(f) Legal Standard

---

[5] The Court appreciates the irony that on one hand, Defendants argue that Plaintiffs fail to plead sufficient facts, and on the other request the Court strike the facts alleged in the Complaint that make up the basis of the allegations against them.

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike is a drastic remedy, which is disfavored by the courts and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Thompson v. Kindred Nursing Centers E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quotation omitted). "Further, when deciding a motion to strike, a court must accept the truthfulness of well-pleaded facts and cannot consider matters beyond the pleadings. *Id.* "'An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Chavarria v. Intergro, Inc.*, No. 8:17-cv-2229-T-23AEP, 2018 U.S. Dist. LEXIS 117631, at *8 (M.D. Fla. July 16, 2018) (quoting Moore's Federal Practice, Vol. 2, s 12.37[3] (3d ed. 2016)).

### B.     Rule 12(f) Analysis

#### 1.     *Incomplete Deposition Testimony*

In the Motions (Doc. Nos. 17, 26), Defendants Fitzpatrick, Mancuso, Howe, Dr. Alvarez, and Advantacare of Florida make an identical argument seeking to strike a portion of Mancuso's deposition testimony that was used in the Complaint. (*See* Doc. 1 ¶ 41). Therein, Mancuso purportedly stated that he and Fitzpatrick were owners of Advantacare Holdings LLC, which is the entity that owned one hundred percent of Advantacare of Florida. (*Id.*). The deposition is not attached to the Complaint for the Court to review, but apparently it was taken on July 31, 2018. (*Id.*). The Motions argue that the deposition was never reviewed or signed by Mancuso and that he submitted an errata sheet on November 18, 2019—more than a year later—correcting his testimony. Thus, the Motions argue that the allegation from the deposition that Mancuso and

Fitzpatrick were also owners of Advantacare of Florida is scandalous and prejudicial because it is incorrect and has now been corrected.

Clearly, the deposition testimony regarding ownership of Advantacare of Florida is related to Plaintiffs' claims that are based on Dr. Alvarez's failure to "wholly own" Advantacare of Florida. Indeed, this testimony is central to the claims against Fitzpatrick, Mancuso, Howe, Dr. Alvarez, and Advantacare of Florida. Other than a conclusory statement that the information within the deposition excerpt is false, Defendants have failed to establish that the information is so scandalous or prejudicial that it warrants striking.

To the extent that Defendants argue the deposition testimony should be stricken as incomplete due to Mancuso's failure to sign it and due to the errata sheet that was submitted more than a year after the deposition—and a month after the Complaint was filed in this case—this request will also be denied. Defendants fail to provide legal authority stating that this is a proper basis to strike an allegation within a complaint. And, Defendants' request would require that the Court find the errata sheet to be truthful and the original deposition testimony to be false, which would be an improper weighing of evidence at this juncture, especially in light of the belated creation of the errata sheet. *PNC Bank, N.A. v. Haghighi Family & Sports Med., P.A.*, 3:16-cv-1226-J-32MCR, 2017 WL 7311870, at *2 (M.D. Fla. June 2, 2017) ("A disputed question of fact cannot be decided on a motion to strike." (quotation omitted)).

These motions to strike will be denied as Defendants have failed to state sufficient grounds on which they might be prejudiced by the inclusion of the deposition testimony within paragraph 41 of the Complaint.

    2.       *"Scandalous"*

The Motions (Doc. Nos. 18, 19, 26) each seek to strike paragraphs from the Complaint as scandalous.[6]

### a.      Paragraphs 44, 45, and Exhibit 8

Defendant CRN Receivables seeks to strike paragraphs 44 and 45 and Exhibit 8 (Doc. 1-8) from the record. Paragraphs 44 and 45 state that nearly all of the drafts Plaintiffs issued to Advantacare of Florida ended up in bank accounts owned by CRN Receivables, resulting in CRN Receivables, owned and controlled by Fitzpatrick, being the beneficiary of ninety-nine percent of the revenue obtained by Advantacare of Florida from Plaintiffs. Exhibit 8 is a chart documenting the drafts Plaintiffs paid to Advantacare of Florida, and it shows which of the drafts—nearly all of them—were endorsed by CRN Receivables. (*See generally id.*).

CRN Receivables argues that these allegations are scandalous because its business model, known as factoring, is completely legal, and the allegations make it appear as if CRN Receivables was operating illegally. And, because CRN's business model is legal, it argues that the amount of endorsements it gave to drafts from Plaintiffs is in no way material to the allegations. These arguments have no merit. These allegations are clearly related to the controversy—they support Plaintiffs' allegations that Dr. Alvarez was not the sole owner of Advantacare of Florida and highlight CRN Receivable's role in the scheme. And, such allegations are not scandalous. There is no allegation that this method of business is illegal—only that it undermines Defendants' contention that Advantacare of Florida was wholly owned by Dr. Alvarez. CRN Receivable's Motion to Strike will be denied.

### b.      Paragraphs 56 and 57

---

[6] Because Motions 18 and 26 overlap, they will be addressed with together. This section is organized by paragraph of the Complaint the motions seek to strike.

Defendants Advantacare of Florida and Dr. Alvarez seek to have these two paragraphs stricken as scandalous. Paragraphs 56 and 57 have portions of deposition testimony from former employees of Advantacare of Florida. These paragraphs provide specific factual examples for Plaintiffs' point that Dr. Alvarez did not "wholly own" Advantacare of Florida. The paragraphs allege that Fitzpatrick, Mancuso, and Howe directed healthcare practitioners to order MRIs regardless of whether they were necessary and provide excerpts from two former employee's deposition testimony stating the same.

Defendants argue that the testimony in paragraphs 56 and 57 is immaterial regarding Dr. Alvarez's ownership. The Court disagrees. The allegations in those paragraphs are that Fitzpatrick, Mancuso, and Howe ordered employees to take medical actions. Under the wholly owned licensing exception, Dr. Alvarez "must own and supervise the business activities of the clinic and remain legally responsible for the entity's compliance with all federal and state laws." *State Farm Mut. Auto. Ins. Co. v. Miami Med. Care Ctr., Inc.*, No. 15-cv-22660-DPG, 2016 U.S. Dist. LEXIS 164341, at *5 (S.D. Fla. Nov. 29, 2016); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1305 (S.D. Fla. 2018) ("A wholly owned clinic is not exempt from the HCCA's licensing requirement if it is not supervised in accordance with the HCCA."). The allegations in paragraphs 56 and 57 are related to Plaintiffs' assertion that these entities did not qualify for the wholly owned exemption because Dr. Alvarez did not supervise other employees.

Defendants also argue that the testimony in these paragraphs does not stand for the conclusions Plaintiffs claim they do and thus are fraudulent statements and should be stricken. Defendants provide no legal analysis and do not argue that the allegations are scandalous. And,

Defendants seek to have the Court weigh the allegations instead of accepting them as true. These paragraphs will not be stricken.

c.    <u>Paragraph 58</u>

Defendants Advantacare of Florida and Dr. Alvarez seek to have this paragraph stricken on the same basis as paragraphs 56 and 57. Paragraph 58 contains the deposition transcript of another former employee, a physician's assistant, and contains allegations that Mancuso instructed him to perform an injection that the physician's assistant considered to be fraudulent. Defendants argue there is no evidence that the injection occurred and that this is not support for Plaintiffs' contention that every claim submitted to Plaintiffs was fraudulent.  For the reasons stated above, this paragraph will not be stricken. And, the Court notes that Defendants argument misconstrues Plaintiffs' allegations. Plaintiffs are not alleging every claim that was submitted was fraudulent, they are alleging that Advantacare of Florida operated unlawfully and thus that Plaintiffs were not legally required to pay the claims.

d.    <u>Paragraph 59</u>

Defendants Advantacare of Florida, Dr. Alvarez, and Advantacare MSG all seek to have paragraph 59 stricken. Paragraph 59 contains allegations as well as deposition testimony that Dr. Alvarez failed to comply with all applicable laws, that Dr. Alvarez personally engaged in unlawful conduct by pre-signing prescriptions for narcotics for Advantacare of Florida, and that a former employee reported Dr. Alvarez to the Drug Enforcement Administration for his actions.

Dr. Alvarez and Advantacare of Florida, citing no legal authority, argue that this allegation is highly inflammatory and has no link to any of Plaintiffs' payment claims as there is no allegation that this alleged pre-signing occurred for any patient whom Plaintiffs insured. These Defendants also make a similar argument as above, stating that this does not prove any claim was non-

compensable. And, Defendants also argue that there is no evidence that the DEA is investigating Dr. Alvarez or Advantacare of Florida.  Again, these arguments evidence a misunderstanding of the nature of Plaintiffs' claims. This allegation is related to Plaintiffs' claims that Advantacare of Florida did not qualify for the wholly owned exemption because Dr. Alvarez did not ensure compliance with the law and that therefore Advantacare of Florida was operating unlawfully. Because Defendants fail to properly support their Motion or sufficiently put forth an argument that these allegations are scandalous, these arguments will be denied.

Advantacare MSG seeks to have the allegations stricken as impertinent and scandalous, arguing summarily that the allegations have "no relation to the pertinent issues" and create significant prejudice to Advantacare MSG. (Doc. 18 at 17). There is no argument as to why paragraph 59's allegations are impertinent or scandalous, other than to explain what the allegations contain. And, the allegations in paragraph 59 apply to Advantacare of Florida and took place prior to Advantacare MSG's operation. Advantacare MSG has failed to meet its burden as to its motion to strike.

### C.    Plaintiffs' Claim for Attorney's Fees

In Doc. 26, Defendants Dr. Alvarez and Advantacare of Florida seek to strike Plaintiffs' claim for attorney's fees that they make within their FDUTPA claim. Regarding FDUTPA, Defendants state that because Plaintiffs are not a consumer and the submission of claims to insurers is not trade or commerce, Plaintiffs are not entitled to fees. The Court has already put this matter to rest, and accordingly Defendants' motion to strike fees will be denied on the same basis. *Health & Wellness*, 389 F. Supp. 3d at 1150 n.4 (denying the same request on the same basis).

### IV.    MOTION FOR ATTORNEY'S FEES

Defendants Advantacare of Florida and Dr. Alvarez, within their Motion (Doc. 26), bring a request for attorney's fees, arguing that if the Court dismisses the Complaint, they are entitled to fees pursuant to section 627.428, Florida Statutes, as prevailing parties and section 501.2105, Florida Statutes, under FDUTPA. These arguments were also raised before Judge Scola and summarily denied because the requests are premature. *Health & Wellness*, 389 F. Supp. 3d at 1153. And, "a motion to dismiss is not the proper procedural vehicle" for a demand for attorney's fees pursuant to these statutes. *Brown*, 2017 U.S. Dist. LEXIS 57019 at *21 (denying motion for attorney's fees in similar factual scenario). The requests will be denied for the same reasons here.

## V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that the Motions to Dismiss (Doc. Nos. 17, 18, 19, 26) are **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on May 22, 2020.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record